UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FILED
4-24-14
CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES OF AMERICA

v.

DAVID MING PON

Case No. 3:14-CR-75-J-39PDB
Cts. 1-20:      18 U.S.C. §§ 1347 and 2
Forfeiture:     18 U.S.C. § 982(a)(7)

## INDICTMENT

The Grand Jury charges:

## COUNTS ONE THROUGH TWENTY

### A.  INTRODUCTION

At all times material herein, unless otherwise specified:

### THE DEFENDANT

1.      DAVID MING PON ("PON") owned and operated Advanced Retina-Eye Institute, an ophthalmology practice located in Leesburg, Florida, as well as a satellite office in Orlando, Florida.

2.      PON was a medical doctor licensed to practice Medicine in the State of Florida.   His ophthalmology practice specializes in retinal diseases and treatment.   He was and always has been the sole ophthalmologist at the Advanced Retina-Eye Institute.

3.      PON was an approved Medicare service provider.

1

### HEALTH INSURANCE: MEDICARE

4.     Medicare is a federal insurance program that provides coverage for people 65 and older, and for certain disabled persons.   The United States Department of Health and Human Services (HHS) is responsible for the administration of the Medicare program.   The Center for Medicare and Medicaid Services (CMS), is the component agency of HHS that administers and supervises the Medicare program.   CMS has contracted with First Coast Service Options (FCSO), in Jacksonville, Florida, so that FCSO will receive, adjudicate, and pay certain Medicare claims submitted by Medicare providers and suppliers of medical services in the State of Florida.

5.     Part B of the Medicare program is a medical insurance program that pays providers and suppliers, with the exception of inpatient healthcare facilities, directly for goods and services.   Claims processing and payment for Medicare Part B claims is done by FCSO in Jacksonville, Florida.

6.     Medicare covers the costs of certain medically necessary clinical services provided that the services are ordered or prescribed by a physician who certifies that these services are medically necessary for the treatment of the patient.   Although the provider is not required to submit supporting documentation relating to the claim, such as original prescriptions or treatment notes, the clinic must maintain such documentation as part of the patient medical record at the facility for at least 5 years pursuant to Medicare regulations.

7.     To receive payment from Medicare, Part B providers are required to include on the electronically submitted claim information, the dates of the services provided, the diagnoses of the conditions requiring the services, and the procedures performed.

8.     To aid in processing and adjudicating of submitted claims, Part B providers are required to use standardized codes to describe the pertinent diagnoses and the procedures for which payment is being sought.   With respect to diagnoses, providers are required to use the codes established in the International Classification of Diseases Manual ("ICD-9 CM").   With respect to procedures for which payment is being sought, providers are required to use the codes established in the Physicians' Current Procedural Terminology code book ("CPT") and the Health Care Financing Administration Common Procedural Coding System book ("HCPCS").   Medical providers indicate, on their claims for payment, CPT and HCPCS codes that identify the types of equipment or services for which Medicare is being charged.   These codes are used to determine the reimbursement.

9.     A Medicare-approved company that provides services to Medicare beneficiaries must meet certain contractual obligations to Medicare.   These obligations are to: (a) bill Medicare only for reasonable and necessary medical services; (b) not make false statements or misrepresentations of material facts concerning requests for payment under Medicare; (c) provide economical medical services only when such services are medically necessary and ordered by the treating physician; (d) assure that such services are not substantially in excess of the needs of such beneficiaries; and (e) not submit or

3

cause to be submitted bills or requests for payment substantially in excess of the provider's costs.

10.     In order to bill Medicare for services rendered, the physician or provider submits a claim electronically to FCSO.   When the claim is submitted, the provider certifies that the contents of the claim are true, correct, and complete, and that the claim was prepared in compliance with the laws and regulations governing the Medicare program.   In the claim, the person, such as a physician, or company making the claim or causing the claim to made with Medicare certifies that the claim is true and accurate.

11.     Medicare makes the physician the "gatekeeper" for determining when medical testing and other medical services are medically necessary, and it is the physician who must certify the necessity of the services.   Absent a valid certification by the treating physician, Medicare lacks the statutory authority to pay the claim.   Federal law, 42 U.S.C. §§ 1395y(a)(1), provides that "no payment may be made...for any expenses incurred for items or services...which are not reasonable and necessary for the diagnosis or treatment of illness or injury."

## B.  SCHEME AND ARTIFICE

From at least the mid-2000s, through at least September of 2011, at Jacksonville, Leesburg, and Orlando, in the Middle District of Florida, and elsewhere,

### DAVID MING PON,

the defendant herein, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program, that is, the Medicare program, and to obtain, by means of false and fraudulent pretenses and representations, money under the custody or control of a health care benefit program, that is, the Medicare program, in connection with the delivery of and payment for health care benefits, items and services.

## C.  MANNER AND MEANS

1.      It was part of the scheme and artifice to defraud that PON would and did own and operate the Advanced Retina-Eye Institute, with offices in Leesburg and Orlando, Florida.

2.      It was further part of the scheme and artifice to defraud that PON would and did operate Advanced Retina-Eye Institute as a facility to provide ophthalmological medical services to adult patients covered under Medicare and commercial insurance.

3.      It was further part of the scheme and artifice to defraud that PON would falsely and fraudulently diagnose patients who came to the Advanced Retina-Eye Institute with wet macular degeneration and other retinal diseases.

5

4.      It was further part of the scheme and artifice to defraud that PON would purport to treat falsely diagnosed retinal diseases, including wet macular degeneration, with laser treatments that were neither medically necessary nor rendered.

5.      It was further part of the scheme and artifice to defraud that PON, would unnecessarily perform additional diagnostic testing following a false diagnosis of wet macular degeneration, knowing that such diagnostic testing was based upon a false and fictitious diagnosis and therefore not medically necessary.

6.      It was further part of the scheme and artifice to defraud that in-house billing documents would be created falsely reflecting that patients were suffering from wet macular degeneration.

7.      It was further part of the scheme and artifice to defraud that PON, in an effort to conceal and cover-up his fraudulent scheme, would create sham medical notes, writings and records falsely asserting that patients had wet macular degeneration, when in fact, the patients were not suffering from wet macular degeneration.

8.      It was further part of the scheme and artifice to defraud that PON would falsely and fraudulently advise patients that they were suffering from wet macular degeneration.

6

9.      It was further part of the scheme and artifice to defraud that PON would falsely and fraudulently counsel patients that he had falsely and fraudulently diagnosed as suffering from wet macular degeneration, that unless he performed laser coagulation treatments on the retinas in their eyes, the patients would go blind in the allegedly diseased eye(s).

10.      It was further part of the scheme and artifice to defraud that PON would submit or cause to be submitted, false, fictitious and fraudulent claims to Medicare and other insurance for payment under his provider number.

11.      It was further part of the scheme and artifice to defraud that PON, as a direct result if the submission of these false, fictitious and fraudulent claims, caused the Medicare program to pay PON's medical practice more than $7 million dollars as payment based upon PON's submission of false and fraudulent claims for wet macular degeneration diagnosis and treatment.

12.      It was further part of the scheme and artifice to defraud that PON, deposited or caused the deposit of funds paid by Medicare and other insurances based upon false and fraudulent claims into a corporate account under his control.

13.      It was further a part of the scheme and artifice to defraud that PON would withdraw proceeds of his fraudulent scheme from a corporate account under his control and use said funds for his personal use.

14.      It was further a part of the scheme and artifice to defraud that PON would take any and all actions to conceal and disguise the fraudulent scheme.

7

## D.  EXECUTION OF THE SCHEME

On or about the dates listed below in each count, at Jacksonville, Leesburg and Orlando, in the Middle District of Florida, and elsewhere,

DAVID MING PON,

the defendant herein, in connection with the delivery of and payment for health care benefits, items and services, knowingly, willfully and with intent to defraud, did submit, and cause to be submitted, the following claims for payment under Medicare, which claims reflected a diagnosis of wet macular degeneration falsely supporting an alleged medical service captured in CPT Code 67220, that is, destruction of localized lesions of choroid (e.g., choroidal neovascularization); photocoagulation (e.g., laser), one or more sessions:

| COUNT | CLAIM DATE | DATE OF SERVICE | MEDICARE BENEIFICIARY | MODIFIER | CLAIM # |
|-------|-----------|-----------------|------------------------|----------|---------|
| 1 | 04/23/2009 | 4/21/2009 | A.D. | RT (Right Eye) | B22090507374595 |
| 2 | 05/13/2009 | 5/11/2009 | A.D. | RT (Right Eye) | B22090507374596 |
| 3 | 09/09/2009 | 9/8/2009 | D.A. | LT (Left Eye) | B22090906529889 |
| 4 | 12/11/2009 | 12/10/2009 | D.A. | LT (Left Eye) | B22091206212300 |
| 5 | 01/27/2009 | 1/22/2009 | D.M. | LT (Left Eye) | B32090105208712 |
| 6 | 02/20/2009 | 2/16/2009 | D.M. | RT (Right Eye) | B32090204825116 |
| 7 | 10/23/2008 | 10/20/2008 | D.S. | RT (Right Eye) | B22081004225249 |
| 8 | 08/20/2010 | 8/19/2010 | D.S. | RT (Right Eye) | B22100803152925 |
| 9 | 11/05/2010 | 11/4/2010 | E.L. | RT (Right Eye) | B82101107773965 |
| 10 | 08/10/2009 | 9/10/2009 | J.T. | RT (Right Eye) | B22090807277461 |
| 11 | 11/09/2009 | 11/9/2009 | J.T. | LT (Left Eye) | B22091107913447 |
| 12 | 12/08/2009 | 12/7/2009 | K.S. | LT (Left Eye) | B92091201449193 |
| 13 | 03/26/2010 | 3/25/2010 | K.S. | RT (Right Eye) | B92100402036711 |
| 14 | 01/02/2009 | 12/30/2008 | M.G. | LT (Left Eye) | B52090108513607 |
| 15 | 12/15/2009 | 12/14/2009 | M.G. | RT (Right Eye) | B52091207025151 |
| 16 | 10/29/2010 | 10/28/2010 | M.T. | LT (Left Eye) | B92101100792336 |
| 17 | 12/03/2010 | 21/2/2010 | M.T. | RT (Right Eye) | B92101200810176 |
| 18 | 10/23/2008 | 10/16/2008 | N.J. | LT (Left Eye) | B72081106971860 |

8

| COUNT | CLAIM DATE | DATE OF SERVICE | MEDICARE BENEIFICIARY | MODIFIER | CLAIM # |
|---|---|---|---|---|---|
| 19 | 12/02/2009 | 12/1/2009 | P.H. | RT (Right Eye) | B12091202408036 |
| 20 | 03/24/2010 | 3/23/2010 | P.H. | RT (Right Eye) | B12100403394085 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## FORFEITURES

1.     The allegations contained in Counts One through Twenty of this Indictment are incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(7).

2.     Upon conviction of a violation of Title 18, United States Code, Section 1347, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense(s).

3.     The property to be forfeited includes, but is not limited to, the following:

a.     A sum of money equal to at least $7,100,000 in United States currency, representing the approximate amount of proceeds obtained as a result of the offenses, in violation of Title 18, United States Code, Section 1347;

b.     All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at

5150 Fairway Oaks Drive, Windermere, Orange County, Florida 34786, more

particularly described as:

> Lot 110, ISLEWORTH, according to map
> or plat thereof as recorded in Plat Book
> 16, Pages 118 through 130, of the Public
> Records of Orange County, Florida;

c. All that lot or parcel of land, together with its buildings,

appurtenances, improvements, fixtures, attachments and easements, located at

3480 Soho Street, #104, Orlando, Orange County, Florida, 32835, more

particularly described as:

> Unit No. 104, Building 27 of The
> Hamptons at Metrowest, a
> Condominium, according to The
> Declaration of Condominium recorded in
> O.R. Book 7830, Page 2283, and all
> exhibits and amendments thereof, Public
> Records of Orange County, Florida;

d. All that lot or parcel of land, together with its buildings,

appurtenances, improvements, fixtures, attachments and easements, located at

5132 Conroy Road, Unit 11, Orlando, Orange County, Florida 32811, more

particularly described as:

> Building 5132, Unit 11 of RESIDENCES
> AT MILLENIA, a condominium according
> to the Declaration of Condominium
> recorded in Official Records Book 8499,
> Page 4131, and all amendments, if any,
> filed thereto in the Public Records of
> Orange County, Florida; together with an
> undivided interest in the common
> elements appurtenant thereto;

e.      All that lot or parcel of land, together with its buildings, appurtenances, improvements, fixtures, attachments and easements, located at 2517 Kilgore Street, #104, Orlando, Orange County, Florida 32803, more particularly described as:

> Condominium Unit A104, TARPON KEY CONDOMINIUM, according to the Declaration of Condominium thereof, recorded in Official Records Book 8433, Page 1601, of the Public Records of Orange County Florida, together with an undivided interest or share in the [sic] common elements appurtenant thereto and any amendments thereto; Together with that certain parking space, designated as a limited common element, appurtenant to the Unit;

f.      A 2008 Lexus GX470, Florida tag 131KBM, VIN:

JTJBT20X580149229; and

g.      A 2005 Porsche 911 Convertible, Florida tag 201YAT, VIN:

WP0CA299X5S755899.

4.      If any of the property described above, as a result of any act or omission of the defendant:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty,

11

the United States of America shall be entitled to forfeiture of substitute property

pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title

18, United States Code, Section 982(b)(1).

A TRUE BILL,

Foreperson

A. LEE BENTLEY, III
United States Attorney

By: MARK B. DEVEREAUX
Assistant United States Attorney

By: Mac D. Heavener, III
Assistant United States Attorney
Deputy Chief, Jacksonville Division

FORM OBD-34
APR 1991

Case 3:14-cr-00075-BJD-PDB   Document 1   Filed 04/24/14   Page 13 of 13 PageID 13
No.

## UNITED STATES DISTRICT COURT
### Middle District of Florida
#### Jacksonville Division

### THE UNITED STATES OF AMERICA

vs.

### DAVID MING PON

## INDICTMENT

Violations:

18 U.S.C. § § 1347 and 2

A true bill,

_____
Foreperson

Filed in open court this 24th day

of April, 2014.

_____
Clerk

Bail   $_____