# EXHIBIT I

Filing and Security

UNCLASSIFIED

**Primary Case:** 209A-JK-53244

**Case Title:** (U) PON, DAVID, M LIN, HSIANG DR. DAVID M. PON, M.D.; ADVANCED RETINA-EYE INSTITUTE;

**Labels:** OW

**Category:** Full Investigation
**Initiated:** 01/25/2012

**Referenced By:** 209A-JK-53244
Lead 1

Details
**Document Title:** (U) Interview of Peter Ow
**Drafted Date:** 07/02/2012
**Type of Activity:** Interview
**Methods:** In Person
**Investigation On:** 06/27/2012
**At:** Oakland , California, United States
**Details:** (U)

On June 27th, 2012, Ow, date of birth was interviewed at the Oakland United States Attorney's Office. Present for the interview were: SA Doss, SA McLeran, Peter Ow, and Ow's attorney Hsiao (Mark) Mao. Mao can be reached at 425 California Street, Suite 2100, San Francisco, California, cellular telephone number (415) 810-7010, email address mmao@kdvglaw.com. Upon being advised of the identities of the agents and the purpose of the interview, Ow provided the following information:

Professionally, Ow is an investor in several companies, but primarily Ow is the chairman of Rockwell Advanced Carbon (RAC). RAC is a China-based corporation which seeks American and Chinese investors to capitalize its manufacturing of battery powder utilized in lithium batteries. RAC is currently not a profitable business, and does not offer rates of return to its investors. However, investors have the understanding that RAC will be a leading business in the future, as automotive manufactures produce electrical cars utilizing RAC's battery powder technology. RAC currently holds approximately 12 investors, to include Ow, Ow's ex-wife, and Dr. PON.

Ow met PON while attending high school in San Francisco, California.

PON and Ow remained friends throughout the years. PON represented himself to Ow as a successful eye surgeon and stem cell researcher, who owned two clinics in Florida. PON also discussed the possibility of opening a third clinic in San Francisco. In approximately 2005-2006, PON and his wife, Jung-Jung (later changed her name to Ingrid), planned a trip to China. Prior to traveling to China, PON emailed Ow and told Ow that PON and his wife wanted to tour China, and wanted to also spend time with Ow. Ow stated that as a friend, Ow

arranged tourist activities for PON and his wife, and spent time with them while they visited China. During PON's stay in China, PON visited the RAC operational plant. PON seemed impressed with the operations and discussed with Ow investment opportunities. PON told Ow that because of the American recession, PON was interested in investing in the Chinese leading economy.

In approximately 2006-2007, PON made his first investment in RAC in the amount of $3 million. Ow was surprised by PON's investment amount, but never questioned its sources, as PON was a successful doctor. All of PON's investments were wired to Ow's accounts. Ow explained that it is common in Chinese investment businesses to wire investment funds directly to whom one has a relationship with, as opposed to wiring funds to a business account. PON invested with OW over $10 million from approximately 2006 until 2011. PON also invested with Fine Elite Holdings and Power City Investments, both are Chinese-based commercial real estate development businesses. Ow explained that because of the legal restrictions placed on the sale of land in China, commercial real estate holding companies are an avenue to circumvent the legal restrictions and allow real estate sales to take place. On occasion, PON approached Ow for joint investments into stem cell research and other American businesses. Ow, living in China, declined all of PON's investment offers.

Ow added that concerning PON's investments, there was never a promise of a rate of return. PON signed investment agreements in support of each investment PON made in China-based businesses via Ow.

Ow further stated that, at times, PON would make an investment and later rescind it. Ow believed that was the case with the initial $3 million investment. After investing, PON told Ow that PON was not ready to commit to the investment, and asked for the funds to be wired back to PON's account. On other occasions, PON requested Ow to wire a portion of PON's investment back to PON, so PON could pay expenses such as taxes. Ow was unaware of the total investment amount returned to PON.

Concerning Ow's bank accounts, Ow stated that he primarily uses Bank of America for all transactions. However, because Bank of America has no sister-bank in China, Ow often transfers funds to larger banks that have representation in China, such as HSBC, Citybank, Bank of Hawaii, and Bank of East and West, to expedite transactions.

Ow concluded he did not collect a fee for investments made, as Ow does not currently hold a license to do so. Per subpoena requirements, Ow will provide all investment agreements between PON and Ow and any of his business ventures to FBI San Francisco within 30 days. Ow was unaware of PON's involvement with any type of fraud, and will cooperate as requested.

1A/1C Packages

Package 1A10

Summary: (U) Interview Notes
Acquired By: Nitiana Doss

Acquired On: 06/27/2012
Receipt Given: No

Attachments:

Routing

Drafted by: Nitiana Doss

Approved by: SSRA SIVOK SUSAN K
KRISTEN McLERAN