UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 3:14-cr-75-J-39PDB

DAVID MING PON
_____/

**ORDER**

**THIS CAUSE** is before the Court on the Special Master's Report Regarding Pretrial Release ("Special Master's Report and Recommendation") [Doc. 75], filed August 8, 2014. Defendant filed Objections to same [Doc. 77] on August 15, 2014,[1] and the United States filed a Response to Defendant's Objections [Doc. 78] on August 20, 2014. Accordingly, this matter is now ripe for judicial review.

On April 24, 2014, a federal grand jury returned an Indictment [Doc. 1], charging Defendant with twenty (20) counts of Medicare fraud in violation of 18 U.S.C. §§ 2 and 1347 and seeking forfeiture of $7.1 million pursuant to 18 U.S.C. § 982(a)(7). During Defendant's initial appearance on April 30, 2014, the United States moved for an order of detention, arguing that Defendant posed a serious flight risk. The Honorable Patricia D. Barksdale, United States Magistrate Judge, granted the Defendant's motion to continue the detention hearing, but issued an order of temporary detention in the interim. [Doc.

---

[1] Defendant styled his objections as a "Request that the Court Approve the Recommendations of the Special Master in his Report Regarding Pretrial Release, *with Two Exceptions*" [Doc. 77]. Pursuant to this Court's July 7, 2014 Order [Doc. 63], the Defendant was required to file "objections" within seven (7) days of the issuance of the Special Master's report. However, because Defendant's "Request" contains sufficiently detailed objections requesting modification to the Special Master's Report and Recommendation, the Court will construe it as an objection.

15].  On May 5, 2014, Judge Barksdale presided over a five (5) hour detention hearing, at the conclusion of which Judge Barksdale ordered the Defendant detained pending trial. [Doc. 24].

On May 29, 2014, Defendant filed a Motion for Revocation of Detention Order [Doc. 39], requesting that the Court revoke the order of detention issued by Judge Barksdale.  After an evidentiary hearing, the Court entered an order [Doc. 51] adopting Judge Barksdale's findings of fact, but stating that it would appoint a Special Master to conduct an investigation into Defendant's assets and provide the Court with a report detailing: (1) the nature and value of Defendant's assets as well as the authenticity of Defendant's stock certificates; (2) whether it is possible to sufficiently encumber Defendant's assets such that he would be reasonably impeded in his ability to fund flight and the best methods for doing so; (3) whether the Special Master is able to review and approve Defendant's requests to use his assets and/or any income generated by his medical practice for expenses, including legal fees and personal or business expenses; and (4) any other suggestions the Special Master may have to provide the Court with reasonable assurance that Defendant will appear for trial.  Accordingly, the Court denied the Defendant's Motion for Revocation of Detention Order [Doc. 39] pending the Special Master's Report and Recommendation.

On August 8, 2014, the Special Master filed his Report and Recommendation, detailing the Defendant's various assets and suggesting mechanisms by which the Court could encumber the assets sufficiently to reasonably impede the Defendant's ability to fund flight.  In pertinent part, the Special Master recommended the following: (a) all real estate owned by Defendant, Defendant and his wife jointly, or corporate entities for which

Defendant serves as the principal officer or managing member and which are not otherwise encumbered by a *lis pendens* should be encumbered through the execution of an Agreement not to Convey or Encumber, executed between the Defendant and the Special Master, and duly recorded in the public record;[2] (b) the Defendant should be required to transfer to his defense counsel the sum of $550,000 for legal fees and expenses associated with his defense and obtain prior approval from the Special Master for all withdrawals or transfers of any amount of money in excess of $10,000; (c) the Defendant should be required to divest himself of all stock in Rockwell Advanced Carbon Holdings LTD and Fine Elite Holding LTD; (d) the Defendant should be required to obtain prior approval from the Special Master for use of his assets for expenses; (e) the Special Master should hold proceeds from the sale of Defendant's real estate in trust for the payment of Defendant's expenses over a certain dollar amount directly from the Special Master to the vendor; (f) the Defendant should be required to provide the Special Master, as directed by the Special Master, records reflecting his income and expenses, both personal and business; (g) defense counsel should be permitted to submit requests to the Special Master *ex parte* for funds to be deposited into counsel's trust account for the payment of legal fees and expenses, which funds would be subject to an agreement that no funds be given to the Defendant; and (h) the Defendant should pay invoices and statements below a certain dollar amount using funds from a monthly sum of money the Special Master would distribute to Defendant. The Special Master also suggested that

---

[2] The Special Master stated that "[f]or properties owned jointly by defendant and his wife, agreement of both is required to encumber both of their interests." (Doc. 75 at 7).

the Court may wish to consider finding an individual to act as a third-party custodian for the Defendant.

The Defendant urges this Court to accept the Special Master's recommendations, with two exceptions: (1) the Defendant's wife need not execute the Agreements not to Convey or Encumber, and (2) the Defendant need not submit to a third-party custodian. The United States argues that, if the Court is inclined to adopt the Special Master's Report and Recommendation,[3] it should be adopted in its entirety.

The issue before the Court is whether Defendant is entitled to release pending trial. The issue is governed by the Bail Reform Act (the "Act"), 18 U.S.C. § 3142, under which there are four categories of release or detention: (1) release on personal recognizance or unsecured bond; (2) release on conditions; (3) temporary detention; and (4) detention. Id. § 3142(a). If the judicial officer determines that a defendant's release on his own recognizance or unsecured bond will not assure defendant's appearance at trial, the officer may order the defendant released subject to one or more conditions. Id. § 3142(c).

The Act contains a statutory presumption that the Defendant should be released pending trial. See id. § 3142(a)-(c); see also United States v. Giordano, 370 F. Supp. 2d 1256, 1261 (S.D. Fla. 2005) ("[T]here is a statutory presumption that [the defendant] should be released pending his trial."). Despite this presumption, a Defendant may be detained if, after a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required" at future proceedings. 18 U.S.C. § 3142(e)(1); United States v. King, 849 F.2d 485, 487, 489 (11th

---

[3] The United States did not file Objections to the Special Master's Report and Recommendation. Rather, the United States only responded to the Defendant's Objections to the Special Master's Report and Recommendation.

Cir. 1988) ("Section 3142(e) accords the judicial officer substantial latitude in determining whether pretrial detention is appropriate.").

A serious risk that a defendant will flee is one of the circumstances that warrants detention pending trial, 18 U.S.C. § 3142(f)(2)(A), but only *if there are no conditions that will reasonably assure the appearance of the defendant*, id. § 3142(e), (f). In determining whether the defendant presents a risk of flight, this Court must consider (1) the nature and circumstances of the offense; (2) the weight of the evidence against the Defendant; (3) the history and characteristics of Defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. Id. § 3142(g). However, under the Act, even defendants that present a serious risk of flight must still be released if the Court concludes that there exist conditions that would reasonably assure the defendant's appearance at future proceedings. See id. § 3142(e)(1) (requiring for pre-trial detention that the judicial officer find that "no condition or combination of conditions will reasonably assure the [defendant's] appearance").

In this case, the Court appointed a Special Master to, among other things, report on and recommend whether it is possible to sufficiently encumber Defendant's assets such that the Defendant would be reasonably impeded in his ability to fund flight and the best methods for doing so. (Doc. 63 at 2). The Special Master recommended a variety of conditions to be imposed that would encumber Defendant's assets, reasonably impede his ability to fund flight, and reasonably assure his appearance at future proceedings. The Court reviews the Special Master's recommendations de novo. See United States v. Abbell, 914 F. Supp. 519, 521 (S.D. Fla. 1995) ("The Court retains jurisdiction to hear these matters de novo, if necessary.").

Upon de novo review and independent consideration of the facts presently available, the Court concludes that there is available a combination of conditions that will reasonably assure the Defendant's appearance at future proceedings and impede his ability to fund flight. The Defendant is therefore entitled to release with certain conditions pending trial. Specifically, the Court adopts the recommendations contained in the Special Master's Report and Recommendation [Doc. 75], with the two exceptions urged by Defendant.

The Court does not believe that the signature of Defendant's wife on the Agreements not to Convey or Encumber or the Defendant's submission to a third-party custodian are necessary to assure Defendant's appearance at future proceedings. First, the Court believes that Defendant's real estate assets can be sufficiently encumbered to impede his ability to fund flight if the Defendant alone signs the Agreements not to Convey or Encumber. With such agreements recorded in the public record, Defendant could not sell, borrow against, or otherwise use his property as collateral to obtain funds. Therefore, the Court concludes that the signature of Defendant's wife is unnecessary to impede Defendant's ability to fund flight. Second, it does not appear that the Special Master even recommended that the Defendant submit to a third-party custodian. Rather, the Special Master merely stated that "[t]he Court may wish to *consider* finding a suitable individual to act as a third-party custodian." (Doc. 75 at 16) (emphasis added). In any event, the Court believes that Defendant's submission to GPS monitoring, daily contact with Pretrial Services, and other conditions for his release will reasonably impede his ability to fund flight and assure his appearance at future proceedings.

Accordingly, after due consideration, it is

**ORDERED:**

1. The Special Master's Report Regarding Pretrial Release [Doc. 75] is **ADOPTED in part**.

2. Defendant's objections [Doc. 77] to the Special Master's Report Regarding Pretrial Release, which the Defendant has styled as "Defendant David Pon's Request that the Court Approve the Recommendations of the Special Master in his Report Regarding Pretrial Release, with Two Exceptions" [Doc. 77], are **SUSTAINED**.

3. **As a condition precedent to the issuance of an Order revoking detention and setting conditions for release**, the Defendant shall:

    a. execute an Agreement not to Convey or Encumber with the Special Master, substantially in the form attached as Exhibit A [Doc. 75-1] to the Special Master's Report, for all properties not otherwise encumbered by a *lis pendens* in which Defendant or a corporate entity for which Defendant serves as the principal officer or managing member holds any ownership.  The Agreement shall be duly recorded by the Special Master;

    b. transfer to his defense counsel the sum of $550,000 to be used for legal fees associated with his defense, if he has not already done so;

    c. cause Fine Elite Holding LTD to transfer to him the shares held in the name of Wisenet Corp. for his benefit and issue the 2,550,000 shares he owns, but that Fine Elite Holding LTD has not issued.

Subsequently, cause Rockwell Advanced Carbon Holdings LTD and Fine Elite Holding LTD to transfer title to all shares the Defendant owns to the law firm of Bingham Greenebaum Doll LLP to be held in escrow pending the outcome of the case. Defense counsel shall hold the shares under a custodial agreement, substantially in the form attached as Exhibit K [Doc. 75-11] to the Special Master's Report, amongst the Defendant, Bingham Greenebaum Doll LLP, and the Special Master. Upon transfer of the shares to his counsel, Defendant shall obtain copies of the books and records entries reflecting the transfer and provide them, along with copies of the new share certificates, to the Special Master for verification;

4. The Special Master's powers set forth in this Court's July 7, 2014 Order [Doc. 63] are hereby modified. Subject to <u>de novo</u> review by the Court, the Special Master shall have the power to:

   a. order the parties to provide necessary information for determining Defendant's compliance with the terms of release;
   b. review and approve or reject Defendant's requests for withdrawals, transfers of funds, and use of his assets for expenses;
   c. hold funds from the sale of Defendant's real estate in a trust account maintained by the Special Master;
   d. pay invoices and statements on behalf of the Defendant from funds held in trust;

    e. communicate with defense counsel *ex parte* regarding requests for the transfer of funds to be deposited into defense counsel's trust account for legal fees and expenses. Defense counsel shall not provide Defendant with funds;

    f. enter into and record agreements with the Defendant and/or defense counsel to reasonably assure Defendant's compliance with his terms of release;

    g. as the Special Master deems appropriate or as ordered by the Court, keep the Court apprised of Defendant's release through the filing of reports. Any party may object to the Special Master's report by filing such objection within seven (7) days of the issuance of the report. Any response to an objection must be filed within seven (7) days of the filing of the objection; and

    h. all other powers conferred upon Special Masters in like cases and, to the extent permitted by law and the Constitution, all powers conferred upon U.S. Magistrate Judges by 28 U.S.C. § 636, including all powers to make such orders as may be necessary and appropriate to fulfill the duties assigned.

The Special Master need not preserve for the record any documents created by the Special Master that are docketed in this case, nor any documents received by the Special Master from counsel or the parties in this case. The Special Master shall proceed with all reasonable diligence, and will continue to be compensated as set forth in this Court's July 7, 2014

Order [Doc. 63]. This reference shall terminate upon final judgment in this cause or upon further Order of the Court. The Court may modify the Special Master's duties on motion by either party or sua sponte.

5. Promptly upon the Defendant's compliance with the requirements set forth herein, the Special Master shall file with the Court a Report on Defendant's Compliance, advising the Court whether Defendant has complied with the requirements of this Order and whether the Defendant should be ordered released pending trial.

6. The United States Marshals Service shall continue to keep the Defendant in custody, provide him with reasonable access to counsel, and produce him for hearings until further Order of this Court.

**DONE** and **ORDERED** in Jacksonville, Florida this 27th day of August, 2014.

_____
BRIAN J. DAVIS
United States District Judge

mg
Copies furnished to:

Counsel of Record