UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

       Plaintiff,

v.                                   CASE NO. 3:14-CR-00075-BJD-PDB

DAVID MING PON,                    (Judge Brian J. Davis)

       Defendant

_____/

HSIANG YIN ("INGRID") LIN,

       Third Party Petitioner.

_____/

VERIFIED PETITION OF INGRID LIN FOR HEARING TO
ADJUDICATE HER THIRD-PARTY CLAIMS

Hsiang Yin ("Ingrid") Lin, by counsel, hereby petitions this Honorable Court under 21

U.S.C. §§ 853(n)(2) and (n)(6), for a hearing to adjudicate the validity of her ownership interests

in substitute property seized from her and her former husband, defendant David Ming Pon, which

substitute property was ordered forfeited by this Court pursuant to a Preliminary Order of

Forfeiture filed on January 8, 2019 (Doc. 328), in partial satisfaction of David Pon's forfeiture

money judgment in the amount of $6,969,484.76 (Doc. 281).

This Petition is timely under § 853(n)(2) as the United States agreed to extend Petitioner's

time for filing until September 26, 2019. Petitioner and the government are in discussions to try to

settle as many of Petitioner's claims out of court as possible.

I.       **The Nature and Extent of Petitioners' Right, Title, or Interest in the Property.**

Petitioner is making an ownership claim to every one of the many substitute assets listed in the Court's January 8, 2019 Preliminary Order of Forfeiture (POF) (Doc. 328). The acts that *allegedly* gave rise to the forfeiture of the substitute property are set forth in the government's Motion for Forfeiture Money Judgment (Doc. 217), its Motion for Preliminary Order of Forfeiture for Substitute Assets (Doc. 293) (which was denied without prejudice on July 18, 2017, for failure to satisfy 21 U.S.C. § 853(p)'s requirements for substitution) (Doc. 307), in the government's October 22, 2018 Amended Motion for Preliminary Order of Forfeiture for Substitute Assets (Doc. 323) and the attached Declaration in Support of Motion (Doc. 323-1), and in David Pon's April 24, 2014 indictment (Doc. 1).

The Eleventh Circuit has still not decided David Pon's direct appeal. If his conviction is reversed, there can be no criminal forfeitures or restitution in this case. This court may therefore wish to stay this matter until the Eleventh Circuit issues its decision in Pon's direct appeal.

Pon's appeal also vigorously challenges the sentence he received, arguing that the sentence is based on a loss amount 280 times greater than the $25,000 loss proved at trial; and that the government failed to present reliable and specific evidence that each billing included in the $7 million loss figure constituted loss. That same argument applies to the approximately $7 million dollar forfeiture amount and the identical restitution award. If Pon's conviction and sentence are affirmed by the Eleventh Circuit, Petitioner Lin will relitigate the correctness of the $7 million figure in this ancillary proceeding, as she has a due process right to do. *See* Point V, below, where this issue is addressed.

## II.     History of Ingrid Lin's Relationship with David Pon.

Ingrid Lin is the former wife of Defendant David Ming Pon. They were married on September 14, 1984, after David Pon graduated from medical school. In 1992 David Pon opened an office in Orlando. From 1992 to 2009, Ingrid worked in the medical office performing administrative tasks, without drawing a salary.[1] Dr. Pon was an extreme workaholic and Ingrid Lin had to work the same crazy hours as her husband. They were sometimes so exhausted that they fell asleep on the office floor at night. She often sacrificed sleep to help her husband. But until about 2004, Dr. Pon resisted Ms. Lin's desire to purchase properties in her own name. In December 2009, Pon told Ingrid that he did not want her to continue working in his office and excluded her from access to the office's financial records. From 1998 to 2008, Ingrid suffered four miscarriages.

From 2007 to 2011, David Pon transferred nearly all of the couple's liquid savings overseas — almost $11 million. Ms. Lin did not know about this until her divorce proceedings, which commenced on October 25, 2011, when she filed for divorce. Ms. Lin believes it was around January 2012 when her divorce attorney informed her that Pon had transferred overseas almost $11 million of their savings. The only significant assets remaining in the United States were the properties at issue here. In 2008, Pon convinced Ms. Lin to establish a half million dollar home equity line of credit against their Isleworth marital residence, 5150 Fairway Oaks Drive, Windemere, FL 34786, to fund a new business venture. The business venture never took place. In October of 2010, without Ms. Lin's knowledge, Pon maxed out the $500,000 available balance on the line of credit and transferred the funds overseas.

---

[1] It is Ms. Lin's recollection that, for a couple of years during this seventeen year period, a yearly salary of $5,000.00 was reported as paid to her for Medicare purposes. Although reported, she believes these funds were not actually paid to her.

On July 30, 2011, Pon told Ms. Lin he was leaving the marriage due to his desire to produce children with another woman. On August 30, 2011, Pon moved out of the Isleworth marital residence while Ms. Lin was attending a conference. Pon did not tell her he was going to move out, nor did he tell her he was taking all of the household files, computers and financial records. Ms. Lin remained at the Isleworth home while Pon moved into the 6420 Lu Emma Lane house.

On October 25, 2011, Pon removed Ms. Lin's access to their credit card account. On October 25, 2011, Ms. Lin filed for divorce. In March 2012, Pon moved back into the Isleworth home (Ms. Lin's residence) while she was visiting her hospitalized mother in Shanghai. Ms. Lin was forced to stay away from her home for four years.

On April 24, 2014, David Pon was indicted on 20 counts of health care fraud, in violation of 18 U.S.C. § 1347. On the same day, Ms. Lin agreed to pledge all of the marital properties as bail bond security for Pon, so he could be released from jail.

On January 9, 2017, Ms. Lin's counsel filed the executed Marital Settlement Agreement and Notice of Filing with the court. On January 10, 2017, the court for Florida's Ninth Judicial Circuit granted an Amended Final Judgment of Dissolution of Marriage. The Marital Settlement Agreement and Amended Final Judgment of Dissolution of Marriage are attached, respectively, as **Exhibits 1 and 2**.

## III.    The Time and Circumstances of Petitioner Lin's Acquisition of the Right, Title, or Interest in the Property.

**A.**    Ms. Lin acquired the two U.S. Highway properties, 21726 U.S. Highway, Leesburg, Florida 34748 and 21822 U.S. Highway 27, Leesburg, FL 34748 on March 29, 1999 and January 10, 2001, respectively (through transfers to D Pon Enterprise, Inc. in which she had a half interest at that time). The first U.S. Highway property was conveyed to D Pon Enterprise, Inc. by Lakefront Motel Inc. and Sherill Turner on March 29, 1999 for $600,000. The second U.S.

4

Highway property was conveyed by Paul and Lanell Trutt to D Pon Enterprise, Inc. on January 10, 2001 for $180,000. The warranty deeds for these properties are attached as **Exhibits 3 and 4**.

Ms. Lin acquired David Pon's half interest in D Pon Enterprise, Inc. on September 21, 2015 for $450,000.  The Closing Statement for the sale of Pon's half interest in D Pon Enterprises, Inc., attached as **Exhibit 5**, shows that Ms. Lin received a credit of $301,578 for the net proceeds she was entitled to receive from the August 28, 2015 sale of 6420 Lu Emma Lane to Wanda Pon for $640,000.[2] Ms. Lin also used $118,092 from her share of the proceeds of selling their first marital home, at 2912 Valencia Way, Ft. Myers, FL, which was purchased in 1991. This sale of David Pon's interest was approved by the Special Master and executed by Joseph Ort of the Ort Law Firm in Winter Garden, FL.

**B**.      Ms. Lin had acquired a tenancy by the entireties interest in 6420 Lu Emma Lane, Groveland, FL 34736 on December 9, 2002. The property was conveyed to Lin and Pon as husband and wife by Gerald R. Freisinger on that date for $750,000. On August 28, 2015, the property was conveyed to Pon's mother, Wanda L. Pon, for $640,000. Wanda was having difficulty paying back the $640,000 in loans she took out to help her son and she pleaded with Ms. Lin to help her by repurchasing 6420 Lu Emma Lane. On July 7, 2017, or sometime thereafter, Wanda Pon conveyed title back to Petitioner Lin for $560,000. $300,000 of that was paid to Wanda at the closing and $260,000 was the mortgage Ms. Lin assumed. This sale was executed by Rich Norris of Network Closing Services, 7651-A Ashley Park Ct., Ste. 401, Orlando, FL 32835. The sale contract is attached as **Exhibit 6**.

---

[2] Wanda had borrowed $640,000 on her home in San Francisco and gave her son that money to pay for his defense in the criminal case.

$50,000 of the purchase money for this buy-back came from Ms. Lin's share of the proceeds from the sale of her first marital residence at 2912 Valencia Way, Ft. Myers. That home was purchased by Lin and Pon in 1991. Another $250,000 came from a loan provided by Ms. Lin's sister in Taiwan, Mei Yin Lin.

**C.**     Ms. Lin acquired 808 N. John St., Orlando, FL 32808 on June 3, 2004 (through Colonial Property Investment, LLC, which she owned), for $260,000. The Orange County Property Summary for 808 N. John Street is attached as **Exhibit 7**. However, David Pon changed Colonial Property to his name in the period 2013 to 2015 without permission from Ms. Lin, when they were in the process of divorce and had no direct communications. This wrongfully acquired property interest was transferred back to its rightful owner, Ms. Lin, on January 10, 2017 pursuant to the marital settlement agreement.

**D.**     Ms. Lin acquired 17837 Lake Lucy Lane, Groveland, FL 34736 on November 8, 2004 (deeded to Mistic Unity, LLC), which LLC she created and owned. The purchase price was $213,000. However, David Pon changed Mistic Unity, LLC and Colonial Property Investment, LLC to his name (as manager) in the period 2013 to 2015 without permission from Ms. Lin, when they were in the process of divorce and had no direct communications. On September 27, 2015, Ms. Lin paid David Pon $65,500 to buy out Pon's supposed interest in the house. Although the house was owned by Mistic Unity, LLC (which was owned by Ms. Lin), she decided to pay Dr. Pon in order to encourage him to settle their divorce. At that time, the property was valued at only $131,000 due to its deteriorated interior and market conditions. The sale was approved by the Special Master and executed by the Ort Law Firm. In late 2015 or early 2016, Ms. Lin went online and re-registered Mistic Unity, LLC and Colonial Property Investment, LLC back in her name. Attached as **Exhibit 8** are the Articles of Organization (2004-2019) for Mistic Unity, LLC; the

Articles of Organization for Colonial Property Investment, LLC (2004-2019) are attached as **Exhibit 9**.

 **E.**  Ms. Lin acquired her tenancy by the entirety interest in marital residence "Isleworth," 5150 Fairway Oaks Dr., Windermere, FL 34786 on January 26, 2005, "as husband and wife." The property was conveyed to them by Stacy Seigle for $2.1 million.  On January 10, 2017, David Pon's half interest in the marital home was transferred to Ms. Lin pursuant to their marital settlement agreement.

 **F.**  Ms. Lin acquired her interest in 3480 Soho St., Unit 104, Orlando, FL 32835 on June 1, 2009, as husband and wife, *i.e.,* as a tenant by the entirety with Dr. Pon. The purchase price was $63,000. On January 10, 2017, David Pon's interest in the property was transferred to Ms. Lin pursuant to their marital settlement agreement.

 **G.**  Ms. Lin acquired 5132 Conroy Road, Unit 11, Orlando, FL 32811 on May 14, 2010 (through Mistic Unity LLC, which she solely owned). The purchase price was $58,000. The Orange County Property Summary for 5132 Conroy Road, Unit 11, is attached as **Exhibit 10**.

 **H.**  Ms. Lin acquired 2517 Kilgore St., Unit 104, Orlando, FL 32803 on April 28, 2010 (through Mistic Unity LLC, which she solely owned). The seller was Janet Banford. The purchase price was $55,000. On January 10, 2017, David Pon's wrongfully acquired "interest" in the property (through his undisclosed transfer of Mistic Unity's ownership in 2013) was transferred to Ms. Lin pursuant to their marital settlement agreement. The sale contract is attached as **Exhibit 11**.

 **I.**  The 2008 Lexus GX470 was purchased on July 4, 2008 and titled in both Ms. Lin's and David Pon's names (joint ownership). Pon's interest in the car was transferred to Ms. Lin pursuant to their marital settlement agreement on January 10, 2017. The 2005 Porsche was titled

solely to David Pon when purchased on February 5, 2005. That car was transferred to Ms. Lin pursuant to their marital settlement agreement on January 10, 2017. The car title still indicates it is jointly owned because Ms. Lin has not attempted to retitle it solely in her name.

**J**.     On January 9, 2017, Dr. Pon finally agreed to the divorce, after a divorce proceeding lasting over five years. On that day the spouses entered into a written marriage settlement agreement. Defendant Pon received about 87% of the marital assets by value (most of which he had moved overseas before Ms. Lin filed for divorce in 2011, without the knowledge of Ms. Lin). He had also taken out a $500,000 loan secured by their primary residence. Ms. Lin has so far paid more than $100,000 on Dr. Pon's equity loan (primarily interest and a small amount of principle), and the loan has still not been paid off.  Ms. Lin received the rest of the property — about 14% by value. See Marital Settlement Agreement and Amended Final Judgment of Dissolution of Marriage, Exhibits 1 and 2.

## IV.   Ms. Lin's Statutory Defenses to Forfeiture.

### A.   Ms. Lin qualifies for the third-party exemption to forfeiture under 21 U.S.C. § 853(n)(6)(A).

Ms. Lin's ownership interest in her properties is "separate from," *and* also "superior to," defendant Pon's *non-existent* "interest" in these substitute properties and is thus exempt from criminal forfeiture under § 853(n)(6)(A). That statutory exemption from criminal forfeiture "is the statutory embodiment of the principle that the property of a third party may not be forfeited in a criminal case." Stefan D. Cassella, *Asset Forfeiture Law in the United States*, §23-15 at p. 300 (1st ed., Cumulative Supp. 2010).  § 853(n)(6)(A) requires the third party to establish that she had a legal right, title or interest in the forfeited property that was superior to, *or* separate from, the

defendant's interest at the time the property became subject to forfeiture.[3] Ms, Lin's  interest in the properties she claims is obviously superior to, *and* separate from, Mr. Pon's interest in them since Pon has no interest in them.

Whether the third party is "innocent" or without knowledge of the defendant's criminal conduct is irrelevant under § 853(n)(6)(A). *E.g., United States v. Totaro*, 345 F.3d 989, 995 (8th Cir. 2003) (if criminal forfeiture reached beyond the property of the defendant it would be *in rem* rather than *in personam* and would improperly punish the third party owner); *United States v. Gilbert*, 244 F.3d 888 (11th Cir. 2001) (the preliminary order of forfeiture "puts the government in the defendant's shoes and the government succeeds to whatever interest, if any, that defendant had in the property."); *United States v. McHan,* 345 F.3d 262, 280-81 (4th Cir. 2003) (Luttig, J., concurring in the judgment) (in §853(n) proceedings "the sole legal issue before the court is the ownership interests of the competing parties"); *United States v. Lester*, 85 F.3d 1409 (9th Cir. 1996); *United States v. BCCI Holdings (Luxembourg), S.A.,* 46 F.3d 1185, 1190 (D.C. Cir. 1995) ("obviously, only the property of the defendant (including property held by a third party pursuant to a voidable transaction) can be confiscated in a RICO proceeding" consistently with due process), *cert. denied*, 515 U.S. 1160 (1995); *United States v. Jimerson*, 5 F.3d 1453 (11th Cir. 1993).

---

[3] The government's interest in substitute property does not ripen or "vest" until "(1) after the defendant's conviction and (2) the court determines the [tainted] property is out of the government's reach for a reason enumerated in [§853(p)]." *United States v. Erpenbeck*, 682 F.3d 472, 477-78 (6th Cir. 2012) (Sutton, J.). *Accord United States v. Jarvis*, 499 F.3d 1196, 1204-05 (10th Cir. 2007). *See also United States v. Chamberlain*, 868 F.3d 290 (4th Cir. 2017) (*en banc*) (overruling its prior decisions finding relation back doctrine applicable to substitute property). Thus, the government's right to the substitute properties ripened or vested on January 8, 2019, when the Court issued its Preliminary Order of Forfeiture (Doc. 328). Ms. Pon's ownership interest in each of these properties was acquired well before January 8, 2019.

"The 'legal interest' that the claimant [petitioner] must have to establish standing under Section 853(n)(2) is the same 'legal interest in the property' needed to prevail on the merits under § 853(n)(6)(A); it is the temporal requirement in § 853(n)(6)(A) that distinguishes the two statutes."[4]

Accordingly, the government has no forfeitable interest in Ms. Lin's properties.

**B.      Ms. Lin also qualifies for the third-party exemption to forfeiture under 21 U.S.C. § 853(n)(6)(B).**

Although the Court does not need to reach this issue unless it rules against Ms. Lin's claim under § 853(n)(6)(A), above, Ms. Lin *also* qualifies for relief as a *bona fide* purchaser for value under 21 U.S.C. § 853(n)(6)(B), the second statutory exemption from forfeiture for third parties. Any property interest Ms. Lin acquired as part of her marital settlement agreement on January 10, 2017, for which she gave plenty of value to Dr. Pon, as well as any property she herself paid for, qualify for the exemption from forfeiture that protects BFPs. *E.g., United States v. Huntington Nat'l Bank*, 682 F.3d 429, 436 (6th Cir. 2012); *United States v. McCorkle*, 143 F. Supp. 2d 1311, 1325 (M.D. Fla. 2000).

As explained above, Petitioner's right to the above-referenced property is based on her legal interest in the property as a marital asset and her receipt of such property by divorce decree; the fact that she was originally listed as a tenant by the entireties with Dr. Pon on certain real properties, including her marital residence; and that she is a *bona fide* purchaser for value of the property that was equitably distributed to her in the divorce.

---

[4] Stefan D. Cassella, *Asset Forfeiture Law in the United States*, § 23-13 (2d ed. 2013, 2016 Cumulative Supp.) at 364. *See U.S. v. Church & Dwight Company*, 510 Fed. Appx. 55, 57 (2d Cir. 2013) (following *United States v. Ribadeneira,* 105 F.3d 833, 835 (2d Cir. 1997)); *U.S. v. Madoff*, 2012 WL 1142292, *3 (S.D.N.Y. Apr. 3, 2012) (same).

First, Petitioner has a legal interest, under 21 U.S.C. § 853(n)(6)(A), in all personal and real property acquired by Defendant Pon during their 32 year marriage, including the designated properties listed above. Fla. St. § 61.075(6)(a)1 ("'Marital assets and liabilities' include: Assets acquired . . . during the marriage, individually by either spouse or jointly by them."). On January 10, 2017, the court for Florida's Ninth Judicial Circuit granted an Amended Final Judgment of Dissolution of Marriage, and in so doing, equitably divided and apportioned the couple's marital property, awarding certain items to the Petitioner, in accordance with their Marital Settlement Agreement executed the day before, on January 9, 2017 such that she became, by operation of Florida law, the sole owner of those properties referenced in the Amended Final Judgment. See Judgment and Agreement, Exhibits 1 and 2.

Second, during the marriage she acquired ownership of several real properties in the manner set forth in Point III, above.

Third, in addition to her legal interests in the property and by virtue of her Marital Settlement Agreement (MSA) and the Florida state court's Amended Final Judgment ratifying it, Petitioner is a *bona fide* purchaser for value of the Defendant's share or part of the right, title, and/or interest in the items of property listed in Point III, above. 21 U.S.C. § 853(n)(6)(B); *Commodity Futures Trading Commission v. Walsh*, 658 F.3d 194, 199 (2d Cir. 2011) (divorced spouse may be found to have paid fair consideration for and to be a *bona fide* purchaser for value under 21 U.S.C. § 853(n)(6)(B), based on her divorce settlement agreement even where part or all of the marital estate consists of the proceeds of fraud, *unlike in Ms. Lin's case* where all of the property at issue is substitute property); *United States v. Cox*, 575 F.3d 352, 355-57 (4th Cir. 2009).

On January 9, 2017, when Petitioner entered into the Marital Settlement Agreement and obtained an explicit sole ownership interest in all of the properties listed therein, including those

properties listed in Point III, above, she was "reasonably without cause to believe" the designated *substitute* properties were subject to forfeiture.[5] That was exactly *two years before* this Court entered the POF forfeiting the substitute assets at issue in this case. "The bona fide purchaser defense turns on knowledge that *specified property* is subject to forfeiture; generalized knowledge of fraud is not enough." *United States v. Petters*, 2013 U.S. Dist. LEXIS 10396, *18 (D. Minn. 2013) (emphasis in original). Accord *United States v. Reckmeyer*, 836 F.2d 200, 204-05 (4th Cir. 1987). Importantly, Dr. David Pon was a respected and very hard working ophthalmologist and retina specialist. For as long as Ms. Lin can recall, unlike most physicians, Dr. Pon never denied treatment to those patients who were either uninsured or lacked the means to pay for medical care. Dr. Pon generously and passionately treated all of his patients with equal care and concern. Ms. Lin believed, and still believes, that Dr. Pon's cutting edge, micro-pulse laser treatment was effective for treating retinal disease while avoiding scarring. By 2017, two years after Dr. Pon's 2015 trial, his pioneering laser treatment was recognized by many prestigious medical schools and the American Academy of Opthalmology. *E.g., A Review of Subthreshold Micropulse Laser for Treatment of Macular Disorders*, U.S. National Library of Medicine, National Institute of Health (2017). This article explains that the treatment pioneered by Dr. Pon is a gentler, more "elegant," more economical, safe and effective way of treating certain macular disorders than the conventional laser and the anti-VEGF injection therapy. Therefore, the government's rejection of his new laser technique at trial has subsequently been proven erroneous. In any event, by the government's own account (Doc. 323-1, p. 3), *less than half* of the $15,691,024 he received in Medicare payments between January 1, 2004 and May 23, 2011 "were identified as fraud

---

[5] She had already acquired many of the properties long before her divorce settlement, as explained in Point III, above.

proceeds." Thus, Dr. Pon's eye practice earned many millions of legitimate dollars even assuming the government's evidence was completely accurate.

Petitioner was forced to give up her right to alimony and her claim to the other marital property — constituting about 87% of the value of the couples' marital property — in return for her share of the equitably divided properties. See Marital Settlement Agreement, Exhibit 1, at paragraph 14.

**V.    Ms. Lin's Constitutional Due Process Defense to Forfeiture.**

As explained above in Point I, defendant Pon's direct appeal challenges the sentence he received, arguing that it is based on a loss amount 280 times greater than the $25,000 loss proved at trial; and that the government failed to present reliable and specific evidence that each Medicare billing included in the $7 million loss figure actually constituted a loss. That same argument applies to the approximately $7 million dollar forfeiture amount and the identical restitution award. If Pon's conviction and sentence are affirmed by the Eleventh Circuit, Petitioner Lin asserts her due process right to relitigate the correctness of the $7 million forfeiture figure in this ancillary proceeding. For present purposes, she adopts the cogent arguments of David Pon in his Eleventh Circuit briefs in No. 17-11455.

Many courts, including the Eleventh Circuit, have held that "[t]he Due Process Clause does not permit" a court to preclude a third party petitioner, such as Ms. Lin, "from asserting her entitlement to property she claims is hers, on the ground that she is bound by a determination that the property belonged to someone else, when that determination was made in a separate proceeding in which she was not permitted to participate." *United States v. Daugerdas*, 892 F.3d 545, 557 (2d Cir. 2018). Accord, *United States v. Rothstein, Rosenfeldt, Adler, P.A.*, 717 F.3d 1205, 1215 (11th Cir. 2013); *United States v. Emor*, 785 F.3d 671, 672, 677 (D.C. Cir. 2015) ("due process

concerns" are raised by "stripping third parties of property rights based on proceedings in which they had no prior opportunity to participate"); *Brown v. United States*, 692 F.3d 550, 552 (6th Cir. 2012); *United States v. Reckmeyer*, 836 F.2d 200, 206 (4th Cir. 1987) ("The determination made at the defendant's criminal trial that the property was subject to forfeiture cannot be considered binding on persons who were not only not parties to the criminal action but were specifically barred from intervening.").

## VI. The Facts Set Forth in Ms. Lin's Petition are Assumed to be True and Must Be Construed in Petitioner's Favor at the Motion to Dismiss Stage of the Ancillary Proceeding.

At the motion to dismiss stage of the ancillary proceeding under Rule 32.2(c)(1)(A), the facts set forth in the third party's petition are assumed to be true and must be construed in the petitioner's favor. Rule 32.2(c)(1)(A)("For purposes of the motion [to dismiss], the facts set forth in the petition are assumed to be true."); *United States v. Salti,* 579 F.3d 656, 667 (6th Cir. 2009) (third-party claimants satisfy Art. III's standing requirements when they "claim a facially colorable interest in the seized property."). That is consistent with a mountain of civil forfeiture opinions on the same point. *E.g., United States v. $31,000.00 in U.S. Currency*, 872 F.3d 342, 350-52 (6th Cir. 2017); *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 651 (7th Cir. 2013); *United States v. 133,420.00 in United States Currency,* 672 F.3d 629, 638 (9th Cir. 2012); *United States v. 1999 BMW "I" Convertible,* 235 F.3d 397, 399 (8th Cir. 2000).

## VII. Additional Considerations.

Ms. Lin, who has an MBA degree, worked for Dr. Pon in his medical practice for almost twenty years with no salary. She took care of the administrative work in his office and drove him from home to clinics or the hospital when he was on call for the emergency room. She would wait for hours in the emergency room parking lot until he finished his surgeries. Sometimes he finished

in the wee hours of the night, but she would still be there to drive him home. She and Dr. Pon put in long hours at work.

She has no 401(k) plan, and no pension. She and Dr. Pon lived very frugally, especially considering their wealth. They did not buy new home furnishings. Although she loves to cook, Ms. Lin did not buy special kitchen appliances or gourmet kitchen accessories. They simply kept the furniture that conveyed with their marital home. They stayed at cheap motels when traveling. They had no maid. They did not belong to the country club in their community. She has no jewelry of any value. Dr. Pon desperately wished for a child, but the couple was unsuccessful. Ms. Lin endured four miscarriages and years of fertility treatments, painful hormone shots and even a donor egg implantation, all with no success. Finally, after 33 years of marriage, Dr. Pon left her for another woman, telling Ms. Lin that he was leaving because she could not fulfill his wish for a child.

## VIII.   Relief Sought by Petitioner Lin.

Ms. Lin requests that the Court adjudicate her interest in the substitute properties listed in the Preliminary Order of Forfeiture and determine that her interests in those properties are not subject of forfeiture. This will involve a period of time for civil discovery and the filing of dispositive motions by the parties. Having found in Petitioner's favor, the Court should amend the Preliminary Order of Forfeiture in accordance with its findings of fact and conclusions of law.

[See Petitioner's Verification on next page.]

## Verification

I, the undersigned Petitioner, swear, under penalty of perjury, that the facts stated in this

Petition are true and correct, to the best of my knowledge and recollection.

9/17/2019

Date                                    Hsiang Yin (Ingrid) Lin

16

Respectfully submitted,


  */s/ Todd Foster*
Todd Foster
FL Bar No. 325198
Barnett Bolt Kirkwood Long Koche & Foster, PA
601 Bayshore Boulevard, Suite 700
Tampa, Florida 33606
813-253-2020 / fax 813-280-9981
tfoster@barnettbolt.com
*Attorney for Petitioner Lin*


  */s/ David B. Smith*
David B. Smith
VA Bar No. 25930
David B. Smith, PLLC
108 North Alfred Street, 1st FL
Alexandria, Virginia 22314
703-548-8911 / fax 703-548-8935
dbs@davidbsmithpllc.com
*Attorney for Petitioner Lin*
*Pro Hac Vice Application Pending*

17

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on the 24th day of September, 2019, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing (NEF) to all parties of record.

 */s/ Todd Foster*
Todd Foster
FL Bar No. 325198
Barnett Bolt Kirkwood Long Koche & Foster, PA
601 Bayshore Boulevard, Suite 700
Tampa, Florida 33606
813-253-2020 / fax 813-280-9981
tfoster@barnettbolt.com
*Attorney for Petitioner Lin*